UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:20-CV-80020-ROSENBERG/REINHART

RAGNER TECHNOLOGY CORPORATION,

  Plaintiff,

v.

CHERYL BERARDI,

  Defendant.

_____/

## ORDER OF REMAND

This cause is before the Court *sua sponte*. After review of jurisdictional briefing from the parties, the Court concludes that it lacks subject-matter jurisdiction over this action and remands the case to state court.

## I.   BACKGROUND

**a. Facts[1]**

This case is about an August 2011 meeting that went downhill. The aftermath of that meeting sparked a nearly decade-long dispute across multiple lawsuits involving confidentiality, intellectual property, and unfair competition. As relevant here, Plaintiff Ragner Technology Corporation ("RTC") holds two patents (the "RTC Patents") related to expandable hoses. 3 ¶¶ 13–14. RTC has granted an exclusive license to Tristar Products ("Tristar") to manufacture, market, and distribute products covered by the RTC Patents. *Id.*

The Complaint alleges the following facts, which are accepted as true for present purposes. In May of 2011, RTC engaged Greg Janson as a broker to solicit investors in its expandable-hose

---

[1] Unless otherwise cited, all page and paragraph citations are to the Complaint. DE 1-1.

technology, and Janson signed a nondisclosure agreement. 3–4 ¶ 15. On August 9, 2011, Janson requested a copy of RTC's business plan to distribute to potential investors, which RTC provided. 4 ¶ 16. Janson then contacted Michael and Cheryl Berardi, providing a copy of the business plan and instructions for accessing RTC's password-protected website, which demonstrated various features of RTC's prototype, called the "Microhose." 4 ¶ 18. Janson had informed the Berardis that RTC was interested only in potential investors, not potential licensees. 4 ¶ 17.

On August 15, 2011, Janson arranged a meeting between RTC representatives and the Berardis, along with a potential investor flying in from Connecticut. 5 ¶ 20. The meeting took place on August 23, 2011, at the Berardis' home in Jupiter, Florida. 5 ¶ 21. RTC's representatives at the meeting were Gary Ragner, Robert deRochemont, Jr., and Margaret Combs. *Id.* The Berardis were present, and the attendee from Connecticut was Edward Kelly, then CEO of National Express. *Id.* Finally, Janson and another broker, Vince Simonelli, were present. *Id.*

At the outset of the meeting, Kelly sought clarification of the meeting's scope, and an RTC representative stated that the company was seeking investors only, not licensees. 5 ¶ 22. Then, Combs insisted that the Berardis, Kelly, and National Express agreed to confidentiality and nondisclosure regarding information disclosed by RTC during the meeting. 5–6 ¶¶ 22–23. All parties orally agreed to terms of confidentiality and nondisclosure, and to execute a written agreement after the meeting. *Id.* RTC then disclosed engineering diagrams, ideas, manufacturing materials, and other techniques and concepts related to its Microhose. 6 ¶ 23. RTC reiterated its desire for investment, and National Express responded that it was interested only in licensing the product, suggesting a Taiwan-based manufacturer. Although RTC expressed hesitancy about using a foreign manufacturer, Kelly requested to contact the manufacturer to determine whether the

manufacturer would be able to manufacture a product based on the RTC Patents. 6–7 ¶ 24. RTC authorized the disclosure, subject to the terms of the confidentiality agreement. *Id.*

The attendees ate lunch, after which RTC demonstrated the Microhose prototype for those in attendance using a faucet at the Berardis' home. 7 ¶ 25. Kelly left the meeting immediately after the demonstration, and the RTC representatives departed at approximately 2:00 PM. 7 ¶ 26. Following the meeting, Combs prepared written agreements consistent with the attendees' verbal nondisclosure/confidentiality agreement and emailed agreements to the Berardis, Kelly, and National Express for signature. 7–8 ¶ 27. No recipient executed the agreement, and National Express did not contact RTC regarding Kelly's outreach to the Taiwanese manufacturer. 8 ¶¶ 29–30.

On November 4, 2011, Mr. Berardi filed a patent application for a hose that "purported to claim novel features of the prototype of the Microhose demonstrated" at the meeting. 9 ¶ 32. With the assistance of Ms. Berardi, he ultimately obtained three patents (the "Berardi Patents") involving features from the prototype demonstrated at the August 2011 meeting and representing that he was the inventor of the subject of the patents. 9 ¶ 33. After the U.S. Patent and Trademark Office rejected certain subsets of the Berardi Patents as anticipated by the RTC Patents, Mr. Berardi gave a presentation to a patent examiner on August 15, 2012. 10 ¶ 34. During the presentation, he explained certain differences between the hose contemplated by his patents and that of the RTC Patents, namely that "the inner and outer layers of the [RTC hose] are bonded together and that the outer layer is plastic material, wherein the [Berardi hose's] outer layer is formed of a fabric material." *Id.* He did not disclose that Mr. Ragner explained to him during the August 2011 meeting, under terms of confidentiality, that the layers need not be bonded. *Id.* Mr. Berardi did not otherwise mention the prototype demonstrated by RTC at the August 2011 meeting. 11 ¶ 35.

3

Blue Gentian, LLC, of which the Berardis are members, holds title to the Berardi Patents and has granted National Express the exclusive rights to market and sell an expandable hose branded the "Xhose." 11 ¶¶ 36–37. This product competes with Tristar Products' "Flex-Able Hose," manufactured under a license from RTC. 12 ¶¶ 39–40. The Berardis have made representations in the marketplace regarding Mr. Berardi's inventorship of the Xhose and alluding to "imitators" of his product. 13–14 ¶ 33. Ms. Berardi assisted her husband in filing patent applications, creating commercials for the Xhose, and otherwise developing and selling the Xhose. *Id.*

**b. Procedural History**

This dispute has precipitated numerous related lawsuits involving, *inter alia*, infringement, validity, and enforceability related to the RTC Patents and Berardi Patents, all of which are proceeding in the U.S. District Court for the District of New Jersey. *See* DE 12 at 4; DE 15 at 13 n.6. An action related to the instant case was initially filed in the Southern District of Florida in 2014. DE 1, Case No. 9:14-cv-80734-WPD (S.D. Fla. May 30, 2014). That case included, as does this one, claims against Ms. Berardi for breach of contract and fraud. That case was then transferred to the District of New Jersey as related to a pending action. DE 56, Case No. 9:14-cv-80734-WPD (S.D. Fla. Oct. 28, 2015). After transfer, the District of New Jersey found that it lacked personal jurisdiction over Ms. Berardi, severing and dismissing without prejudice the claims against her. DE 134, Case No. 1:15-cv-07752-NLH (D.N.J. Mar. 22, 2018).

On May 21, 2019, RTC filed the instant Complaint against Ms. Berardi in Florida state court, alleging common-law fraud and breach of contract. Ms. Berardi removed the action to this Court on January 8, 2020,[2] asserting that this Court has federal-question jurisdiction under 28

---

[2] Ms. Berardi states that she did not receive the Complaint until December 9, 2019, when Mr. Berardi was served. DE 1 at 1.

U.S.C. §§ 1331 and 1338(a). Because the Complaint contains only state-law causes of action, the Court requested that the parties provide briefing on the Court's subject-matter jurisdiction. DE 10. Ms. Berardi argues that the Court has federal-question jurisdiction under *Gunn v. Minton*, 568 U.S. 251 (2013), which RTC contests.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn*, 568 U.S. at 256 (citation and internal quotation marks omitted). Congress has extended federal-court jurisdiction to "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and specifically to "any civil action arising under any Act of Congress relating to patents," § 1338(a), with the latter form of jurisdiction being exclusive. Ordinarily, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn*, 568 U.S. at 257. But when a complaint raises only state-law claims, there is a "special and small category" of cases over which federal-question jurisdiction extends. *Id.* at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

A federal court has federal-question jurisdiction over a state-law claim "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* Only if all four requirements are met is jurisdiction proper. *Id.* Finally, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

5

## III. DISCUSSION

Ms. Berardi asserts that RTC's claims for fraud and breach of contract arise under the patent laws because the adjudication of those claims will require the resolution of issues regarding the Berardi Patents. The Court considers each element of *Gunn* in turn.

### a. Necessarily Raised

"[A] patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims." *NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1344 (Fed. Cir. 2015). The elements of fraudulent misrepresentation under Florida law (styled "Common Law Fraud" in Count I of the Complaint) are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (citation omitted). The elements of breach of contract are: "(1) a valid contract existed; (2) a material breach of the contract; and (3) damages." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. Dist. Ct. App. 2017).

Ms. Berardi argues that in proving damages, the final element of both the fraud and breach-of-contract claim, RTC must necessarily raise substantive issues of patent law.[3] Ms. Berardi articulates RTC's theory of harm as follows: First, Ms. Berardi misrepresented that she would keep information disclosed during the August 2011 meeting confidential. Second, in reliance on that misrepresentation, RTC disclosed confidential information and demonstrated the Microhose to the Berardis. Third, Ms. Berardi assisted Mr. Berardi in filing patent applications which purported to

---

[3] Defendant also argues that a federal issue is necessarily raised with respect to the breach element of RTC's breach-of-contract claim. Defendant argues that the allegation of breach "is pleaded in direct conflict with 37 C.F.R. § 1.56, the duty to disclose information material to patentability." DE 12 at 11. But Defendant cites no authority showing that this regulation is necessarily raised as part of RTC's claim, as opposed to a defense. This regulation is discussed further in the Court's analysis of whether any federal issues are "substantial."

claim features of the Microhose demonstrated by RTC during the August 2011 meeting, and the Berardi Patents were issued listing Mr. Berardi as the inventor. Ms. Berardi argues that because the Complaint alleges that RTC was harmed by the "filing of false patent applications claiming features of the product disclosed by RTC," an issue of patent law is necessarily raised in the damages element of each cause of action. DE 13 at 9.

Although that is one theory of harm, it is not the only one alleged in the Complaint. The Complaint alleges that Mr. Berardi developed his product only after Ragner's confidential disclosure that the outer cover of an expandable hose "could include a fabric cover, and that the inner and outer layer need not be bonded." *Id.* at 10–11, ¶¶ 34, 35. The product that Mr. Berardi developed, the "Xhose," is a direct competitor of the product licensed by RTC, the "Flex-Able Hose." *Id.* at 12 ¶ 40. Ms. Berardi has helped produce commercials for the Xhose and otherwise market it, benefiting financially from sales of the Xhose. *Id.* at 14 ¶ 44. In other words, an injury resulting from the alleged misrepresentation and breach of confidentiality may be the loss of market share and reputational harm caused by Xhose's development and competition with the Flex-Able Hose. A state court could find that this injury occurred without necessarily deciding the validity, enforceability, scope, or other federal issue related to the Berardi Patents. Accordingly, RTC's claims for fraudulent misrepresentation and breach of contract do not necessarily raise a patent issue.

   b. **Actually Disputed**

The parties actually dispute numerous issues relating to the Berardi Patents, including inventorship and infringement of the RTC Patents by products covered under the Berardi Patents. *See* DE 12 at 12 (citing seven cases between entities related to the parties).

### c. Substantial

For purposes of federal-question jurisdiction, "it is not enough that the federal issue be significant to the particular parties in the immediate suit." *Gunn*, 568 U.S. at 260. Rather, the inquiry looks "to the importance of the issue to the federal system as a whole." *Id.* Three nonexclusive factors guide the determination of whether an issue is substantial:

> First, a substantial federal issue is more likely to be present if a pure issue of federal law is dispositive of the case. Second, a substantial federal issue is more likely to be present if the court's resolution of the issue will control numerous other cases. Third, a substantial federal issue is more likely to be present if the Government has a direct interest in the availability of a federal forum to vindicate its own administrative action.

*NeuroRepair*, 781 F.3d at 1345 (citations, alterations, and internal quotation marks omitted).

First, Ms. Berardi argues that whether the Berardi Patents were fraudulently procured will be dispositive of the case. That is incorrect for two reasons. First, a patent issue is not necessarily raised for the reasons described above. Second, even if a patent issue were necessarily raised, it would still not be dispositive of the case. RTC would have to prove each element of its fraudulent misrepresentation and breach of contract claims, which involve questions of fact and of Florida law. *Id.* at 1346 ("Even if the federal issue is resolved in their favor, 'plaintiffs must still prove the remaining elements of fraudulent misrepresentation (such as intent) or breach of contract (such as the existence of a contract).'") (quoting *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 571 (6th Cir. 2007)).

Second, Ms. Berardi argues that rulings on patent issues in this action would control "the outcome of seven (7) federal actions—six (6) of which include patent-infringement claims with compulsory counterclaims regarding non-infringement, invalidity and inequitable conduct," and another antitrust case alleging fraudulent procurement. DE 12 at 15. However, neither party briefed whether a state-court ruling on the Berardi Patents in this action would have a preclusive effect on

the pending federal cases.  Assuming for argument's sake that it would have some preclusive effect, it still would not control numerous other cases within the meaning of *Gunn*.  According to Ms. Berardi, the only cases to which such a ruling would arguably apply are cases already pending between the parties and related entities.  This is "poles apart" from *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), the paradigmatic example of this concept.  *Gunn*, 568 U.S. at 262 (citation omitted).  There, the federal issue was a notice requirement under a federal statute that would apply generally to tax-sale cases involving the Internal Revenue Service.  *Grable*, 545 U.S. at 315.  Here, determinations regarding the viability of the parties' patents would have limited application beyond the dispute between these parties and their affiliates, multifarious though the dispute may be.

Third, Ms. Berardi argues that the Government has a strong interest in having a federal forum to vindicate its administrative action.  Ms. Berardi cites a regulation requiring those in the patent-prosecution process to disclose all known information that is material to the patentability of an invention, which Ms. Berardi suggests would be implicated in the course of determining alleged breach and damages.  37 C.F.R. § 1.56; *see* DE 12 at 15 ("Because the Government has a strong interest in uniform application of its rules and regulations regarding the patent process, it also has a strong interest in ensuring that patent applicants in different parts of the country are subject to the same application of its rules and regulations.").  Ms. Berardi does not explain in detail why this regulation would be construed as part of RTC's claims, but in any event, a duty of candor imposed by a federal regulation is distinguishable from the administrative action in *Grable.*  Unlike the statutory notice at issue in *Grable*, which would have impacted IRS procedures prospectively, the government has no such direct interest in specific disclosures made to the Patent and Trademark Office eight years ago.  *Grable*, 545 U.S. at 315.

9

### d. Capable of Resolution in Federal Court Without Disrupting the Federal-State Balance Approved by Congress

Finally, Ms. Berardi argues that federal jurisdiction would not upset the federal-state balance because Congress vested the federal courts with exclusive jurisdiction over cases arising under patent law. To an extent, this argument begs the question to be answered, since the *Gunn* inquiry is directed to determining ***whether*** a case arises under the patent laws. And here, because patent issues are embedded only in the injury portion of RTC's claims, if at all, there is a heightened risk of injury to the federal-state balance.

A plaintiff's entitlement to any particular type of damages and the measure thereof are often fact-bound questions, the answers to which may change as a case proceeds. Thus, a defendant's suggestion that a plaintiff can prevail solely under a damages theory relying on federal law should be considered with caution. After all, the consequence of finding that a federal court has patent jurisdiction is to foreclose state-court jurisdiction. 28 U.S.C. § 1338(a) (conferring exclusive federal jurisdiction for actions arising under patent laws). Where, as here, a fair reading of the Complaint yields multiple possible theories of harm, not all of which require construing federal law, the exercise of jurisdiction would be both speculative and inconsistent with the principles of federalism that undergird *Gunn*. *See MDS*, 720 F.3d at 843 ("To hold that all questions of patent infringement are substantial questions of federal law for the purposes of federal patent jurisdiction would sweep a number of state-law claims into federal court."); *see also NeuroRepair*, 781 F.3d at 1348 ("Since *Gunn*, courts considering alleged violations of a variety of state laws have declined to find federal question jurisdiction notwithstanding the presence of an underlying issue of patent law.") (citing cases).

Therefore, the Court concludes that this action does not arise under the patent laws, and the Court must remand the case for lack of subject-matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows**:**

1. This case is **REMANDED** to the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida.

2. The Clerk of Court is instructed to **CLOSE** this case, terminating all deadlines and denying all pending motions as moot.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 16th day of March, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record